AMOS S. TREAT *vs.* GEORGE RICHARDSON AND OTHERS.

The petitioner and respondent entered into a written contract in August, 1875, by which the former bought of the latter 1,812 shares of the stock of a certain corporation and 59 bonds of the same corporation of $1,000 each, for which he was to pay $125,000, the delivery and payment to be made November 1st, 1875. In October, 1875, the respondent transferred to the petitioner 612 shares of the stock and the petitioner paid him $50,000. The remainder of the stock and the bonds not being delivered at the time agreed, the petitioner,

Treat *v.* Richardson.

having made demand for them and tendered the $75,000, brought a bill in equity to compel the respondent to transfer the stock and deliver the bonds. In June, 1877, while this suit was pending, the parties made an agreement in writing that the respondent should, on the 9th of July, transfer the stock, deliver 57 of the bonds, and pay $2,000 and interest for the two other bonds, and that the petitioner should at the same time pay $75,000 to the respondent, with six and a half per cent. interest from November 1st, 1875, and that the suit should then be withdrawn. On the 9th of July the respondent made a tender of performance, but the petitioner refused to accept the bonds tendered and make the payment agreed, on the ground that the bonds did not answer the description of them in the original contract. The suit therefore went on, and the respondent then pleaded his tender of performance under the new agreement, and claimed that by the petitioner's refusal to accept he was discharged from further performance, and by a cross bill prayed for a re-transfer of the 612 shares of stock on his repaying the $50,000. The petitioner replied that the bonds were not of the character represented in the original agreement. The court found that the bonds tendered were the same that the petitioner purchased by that agreement, and decreed that the respondent should transfer the stock, deliver the 57 bonds, and pay the $2,000 and interest, and that the petitioner should pay the $75,000, with interest at six and a half per cent from November 1st, 1875, deducting the amount of dividends and interest received by the respondent on the stock and bonds since that date. Held, on motions in error filed by both parties—

1. That it was of no consequence in the present suit whether the bonds tendered answered the description of the bonds purchased, as it was found by the court that they were in fact the same bonds that were purchased.

2. That if the bonds proved to be of less value than the bonds described by reason of their not being of the precise character represented, the petitioner's remedy was by an action at law for damages, and not by a bill in equity; and clearly would not be by the present bill, which prayed only for a decree for the identical bonds purchased.

3. That the agreement of June, 1877, was not strictly a modification of the original agreement, but an adjustment of matters arising by reason of the failure to perform the original agreement; and that the tender of performance by the respondent on the 9th of July, 1877, was properly found by the court to be a tender under the new agreement, the performance of that agreement being all that the respondent could do towards performing the original agreement.

4. That although that tender by the respondent was good and he discharged his whole duty in the matter in making it, yet since the petitioner believed the bonds tendered to be different from those to which he was entitled and refused to receive them for that reason, he was not to be regarded as having abandoned the contract by such refusal, and the respondent was not discharged by it from the obligation afterwards to perform on the petitioner's demand.

5. That the stock and bonds had vested in the petitioner and the respondent held them as bailee for him.

6. That the petitioner was properly decreed to pay the respondent six and a half per cent interest on the $75,000, that being the rate of interest that had been fixed by the agreement of June, 1877.

The finding of immaterial facts does not necessarily make a decree erroneous.

BILL IN EQUITY to compel a transfer of certain stock and the delivery of certain bonds, with payment of damages, and for an injunction; brought to the Superior Court in Fairfield County, and heard upon the respondents' answer and cross bill, before *Hitchcock, J.* Facts found and decree for the petitioner, and motion in error by both parties. The case is sufficiently stated in the opinion.

*A. S. Treat* and *C. Thompson*, for the petitioner.

*W. K. Seeley* and *E. W. Seymour*, for the respondents.

CARPENTER, J. A careful attention to the issue presented by the pleadings will enable us rightly to apprehend the questions involved, and will materially aid us in making a correct disposition of them.

The bill alleges in substance that the petitioner, on the 25th day of August, 1875, bought of the respondent, George Richardson, eighteen hundred and twelve shares of the capital stock of the Bridgeport Hydraulic Company, and fifty-nine bonds issued by the company, each for $1,000, for which he was to pay the sum of $125,000, and that by the contract the title to the stock and bonds vested in him, although delivery and payment were postponed to a subsequent time. It is then alleged that on the 11th day of October, 1875, twelve hundred shares of the stock were transferred to him pursuant to the contract and that he paid to Richardson $50,000 of the purchase money. The balance of the money was to be paid by the petitioner, and the balance of the stock was to be transferred and the bonds delivered to him on the first day of November following. He then alleges a tender of payment and a demand for the delivery of the stock and bonds and a refusal to comply with the terms of the agreement by Richardson. The bill then prays that Richardson may be compelled to transfer to the petitioner said stock and deliver to him said bonds. The other averments in the bill relating to other parties are not now material. These parties need not be further noticed, and we will speak of Richardson the principal respondent as if he were sole respondent. Afterwards

the petitioner filed a supplemental bill the contents of which it is not necessary to state. To these bills there was a demurrer.

The case came to trial in June, 1877. The parties then agreed as follows :—The respondent was to transfer six hundred and twelve shares of the stock, deliver fifty-seven bonds, pay $1,000 each for two bonds (or deliver the bonds) and interest; and the petitioner was to pay $75,000, with interest at six and a half per cent. after November 1st, 1875. The suits were to be discontinued and receipts passed. This agreement was to have been performed on or before July 6th of the same year, but the time was extended to July 9th. On that day the respondent tendered and offered to perform his part of the agreement, but the petitioner refused to accept the bonds and pay the money. Consequently the suit was not discontinued and receipts were not given. Subsequently the respondent withdrew his demurrer and filed an answer and cross-bill, in which he set up the agreement of June 22d, 1877, and the tender and refusal of July 9th. He then claimed that the petitioner then and thereby broke his contract and that it was no longer obligatory upon him. He further alleged that his circumstances and condition had materially changed since the tender, and that he was no longer able or willing to perform the agreement, and prayed that the twelve hundred shares of stock might be re-transferred to him upon the re-payment of the money paid therefor.

The petitioner replied in substance as follows:—That he was wholly ignorant of the issuing or existence of the fifty-nine bonds at the time of the purchase, of which the respondent was then informed; that the bonds were in New York and were purchased without examination or inspection; that the respondent described, represented and warranted the bonds to have been regularly issued and to be in all respects first-class negotiable six per cent. bonds, and good, regular, legal and valid; that he purchased them as such and upon the faith of such representations; that he never saw the bonds before July 9th, 1877; that the bonds offered and tendered to him on that day were not first class negotiable bonds regularly

issued, nor were they good, regular, legal and valid, nor were they the same bonds described, represented and warranted to and purchased by him, but other and different, and of much less value, if not entirely worthless.

It will be noticed that this reply is not in form an amendment of the bill, nor is there anything in it to indicate that it was intended as such or designed to lay the foundation for any claim to relief other than that specifically prayed for in the bill. For any such purpose it was manifestly insufficient, for it does not state in what the defect or irregularity in issuing the bonds consists nor wherein they are invalid. But it does allege matter sufficient, if true, to be a perfect answer to the tender, for it alleges that the bonds tendered were not the bonds purchased. And the allegations relating to the kind, character and description of the bonds sold and the bonds tendered were pertinent to the inquiry whether the bonds tendered differed from the bonds purchased. The facts found in this part of the case do not seem to have been used or claimed for any other purpose. The record does not disclose that any relief was asked for other than the delivery of bonds of the character and description of those purchased. No suggestion was made or could be properly made that the petitioner was entitled to damages for fraud or a false warranty in representing the bonds sold to be different from what they really were. Indeed the petitioner's brief shows, as well as the record, that he would have been satisfied with a decree directing the respondent to deliver to him bonds of the precise character of those he claimed to have purchased. Such was the issue and such was the relief demanded.

The evidence did not fully sustain the petitioner's claim. He proved perhaps that the bonds purchased were represented to be of a certain character and that the bonds tendered were not strictly and in every respect as represented, but he failed to show that the bonds tendered were not in fact the bonds purchased. On the contrary the finding shows that they were the same bonds.

The result then is simply this:—the petitioner purchased certain bonds; the respondent represented them to be of a

Treat v. Richardson.

given description; the proof shows that they were not as represented, but it does show that the bonds actually purchased were the identical bonds tendered. In this state of things the petitioner's remedy, if he is not satisfied to take the bonds as they are, is not in equity, by a decree that the respondent procure and deliver to him bonds answering the description given, but an ordinary action at law for damages. In this proceeding he can only claim a decree directing the delivery of the identical bonds purchased.

We come now to consider the matters alleged as error by the petitioner.

1. The first error assigned relates to the validity and effect of the bonds and does not bear upon the vital question of identity. For if they were identical the effect of the tender will be the same, whether they were valid or invalid.

2. The second error assigned is as follows: in finding and adjudging "that the bonds tendered by said George on said 9th day of July, 1877, were the bonds mentioned in the agreements between said Treat and said George," for that the bonds mentioned were "good and regular, properly issued, and all right," while the bonds tendered were neither countersigned nor certified as said act requires, nor were they under seal, and were and always had been owned by Joseph Richardson.

Here the petitioner confounds two questions which are radically different—first, the identity of the bonds, and second, their validity and legal effect. The first is a question of fact and is disposed of by the court below. The second is evidence proper to be considered in determining the first, but is not in itself sufficient to show that the finding in respect to the first is legally wrong.

3. It is next claimed that it was error to find that Joseph Richardson, the owner of the bonds tendered by George, "was a bonâ fide holder thereof for full value and that they were good and valid bonds against said company, and the same were so believed to be good and valid by said George," for that no such facts were in issue, and they were immaterial.

These facts may have been indirectly involved in the issue

as showing that Joseph Richardson, who furnished the bonds to George for the purposes of the contract, had a good title thereto, and thus tending to prove that the petitioner acquired a title.    In that view of the case the petitioner has no cause of complaint.    But admitting that these facts are immaterial as claimed, we are unable to see how they vitiate the decree. The insertion of immaterial matter is not necessarily erroneous.

4.    The petitioner next complains that the court erred. in finding that the tender was made under the agreement of June 22d, 1877, which, being in writing, purports on its face to be under the prior agreements.    On looking at the agreements and the things actually tendered we think the finding of the court was right.    The respondent offered to do all that he could then do to perform the original agreement —deliver the bonds and the balance of the stock.    He also tendered performance in full of the agreement of ·June 22d, 1877—payment in cash at par for the two bonds not delivered, and interest on all the bonds.

5.    The fifth assignment of error sums up the four preceding and need not be separately noticed.

6.    The sixth relates to the interest—the objection being that the decree requires the petitioner to pay six and a half per cent. interest on the balance of the purchase money after November 1st, 1875.

The record discloses nothing showing that the decree is inequitable in this respect.    It is true courts will not as a general rule allow interest or damages in the nature of interest at the rate of more than six per cent. per annum; but in this case the court is practically decreeing a specific performance of a contract at the petitioner's request.    Certainly he cannot complain that he is required to perform his part of the contract.

On the whole, if the petitioner is entitled to any decree, we think it is the decree passed by the court.    We see no ground on which he can properly complain.

We come now to consider the respondent's motion in error; and here we shall confine ourselves to the effect of the tender.

.The petitioner claims, and that claim does not appear to be controverted by the respondent, that by the contract of August 25th, 1875, the title to the stock and bonds vested in himself. That claim is the corner stone of the petitioner's case. If it is not well founded, if the contract was a mere agreement to sell and purchase at a future day, his case is a mere petition for a specific performance of a contract for the sale of personal property. The general rule is, that such a petition cannot be maintained. We shall treat the contract as the parties have, as a sale vesting the title, as between them, in the petitioner before delivery.

On the 11th day of October following twelve hundred shares of the stock were transferred and $50,000 of the purchase money paid. It was then understood that the balance of the stock was to be transferred and the bonds delivered on the first day of November. On that day the petitioner offered to pay the balance of the purchase money and demanded the stock and the bonds, but the respondent declined to deliver them. Soon after this petition was brought. In June, 1877, it came on for trial, when the parties came together and made the agreement hereinbefore referred to. The agreement then made in respect to interest was not, strictly speaking, a modification of the original agreement; it was rather an adjustment of matters subsequently arising by reason of the failure to perform the agreement at the time stated. So that the contract of June 22d adjusted matters which had not before been the subject of any agreement, modified the original agreement in respect to the amount to be paid for bonds not delivered, and fixed a time for performing the contract in respect to delivery and payment.

This last constituted the gist of the case. The modification of the contract was of little consequence and there is now no controversy between the parties respecting it except of the most technical character. The matter of interest was incidental and must necessarily be the subject of agreement or a matter to be settled by the court.

The time of performance was extended to July 9th, 1877.

On that day the respondent tendered the bonds, fifty-seven in number, $2,000 for two bonds not delivered, the interest, and the balance of the stock, and demanded payment of the $75,000 and interest. The petitioner made no objection to receiving the stock, did not object to receiving $2,000 instead of $1,700 for the two bonds not delivered, did not object to receiving or paying the interest agreed upon, but did object solely on the ground that the bonds were not as they were represented to be by the respondent when sold. Now in view of the finding of the court that the bonds were good and valid, that Joseph Richardson was an innocent and *bonâ fide* holder thereof for full value, that he furnished them to George Richardson to enable him to complete his contract with the petitioner, and that they were the identical bonds which he purchased and the title to which vested in him, we must regard the tender as good—as an offer in fact to do all that could be required of the respondent. Thus he discharged his whole duty in the premises.

The reason given by the petitioner for not accepting them—that they were not regularly issued, that their validity was in doubt, and that their market value was thereby impaired, may or may not be a sufficient excuse for not taking them and parting with his money, but that does not reach or affect the point in question—the validity of the tender. Did the respondent offer to the petitioner the very bonds which he purchased and then owned? If he did the tender was good irrespective of the value and character of the bonds. Their value and character may be material in another proceeding but not in this. For the petitioner does not ask to be relieved of his contract on the ground of fraud or breach of warranty. Such relief the respondent virtually offers him in his claim that the whole contract should be rescinded; which claim the petitioner resists. Nor can he successfully claim that the respondent should be required to procure and deliver bonds answering the description given at the time of the sale, for that is not the remedy which the law provides for such an injury. Neither is this petition an appropriate remedy for the recovery of damages for a breach of warranty. The remedy

sought is the possession of the identical bonds purchased. If he purchased none, if the title failed to vest by reason of fraud or misrepresentation, and the petitioner elects so to consider it, the foundation of his action is gone. But if there was no fraud and at most a technical breach of a warranty, the bonds sold and tendered substantially answering the description, and so far good and valid as to practically secure to the petitioner all that he contemplated, then the petitioner was bound to receive them or abandon his petition. We think therefore that the tender was good and a complete defense to the action. The petitioner had a much more simple remedy. He might at any time have taken his stock and bonds. Had he offered to do so at any time after the tender and before the decree, and had been refused, the case would have presented quite a different aspect. On this point we think the decree was erroneous.

The respondent claims that the effect of the tender and refusal was to annul the entire contract, and that he is now entitled to have the stock re-transferred to him upon re-payment of the purchase money. We do not think that such a result necessarily follows—certainly not by mere operation of of law. If a promissor agrees to sell and deliver property, payment to be made and title to vest on delivery, and there is a tender of the property which is refused, it may be that the contract is thereby discharged. In such a case no title passes and the promisee by his refusal puts it out of his power to acquire a title under the contract. But in this case the title had already passed to the purchaser and the contract had been in part consummated by a delivery of a portion of the property. The mere refusal to accept did not divest the title. It will hardly be contended that the petitioner might by his own act thus put an end to the contract and compel the respondent against his will to keep the bonds and the balance of the stock, and to take back the stock already transferred and refund the money. It must be conceded that the respondent might enforce the contract by suing for and collecting the purchase money.

It may be that the party making a tender would in some

instances have a right to elect to consider the contract at an end. If the circumstances are such as to afford a reasonable presumption that the party refusing to accept intends thereby not to carry into effect the contract, or if the party tendering performance will otherwise be placed in a worse position, in these and in similar cases he may well have such an election. But we are not prepared to say that it would be equitable for the respondent to have and exercise such a right in this case. There is nothing found which requires a rescission of the contract in order to protect the respondent's rights. On the other hand the petitioner certainly manifested no intention to abandon the contract. It is pretty evident that he believed that the bonds tendered were not good and valid, or at least that they were not issued in strict conformity to law and the charter, and that their market value was thereby impaired; also that he doubted whether they were the identical bonds which he purchased. The circumstances which raised these doubts then or about that time first came to his knowledge. Under the circumstances we think he might properly refuse to accept them until the matter could be investigated without forfeiting the entire contract.

On the whole we think that the title remained in the petitioner, and that the respondent holds the bonds and stock as bailee for him. It follows that there was no error in refusing to grant the prayer of the cross-bill.

For reasons given above the judgment must be reversed.

In this opinion the other judges concurred.