BERNIER v. GRISCOM–SPENCER CO.

(Circuit Court, S. D. New York. May 11, 1908.)

1. SPECIFIC PERFORMANCE—CONTRACT TO DELIVER CORPORATE STOCK—PLEADING.

It is not essential to the statement of a good cause of action for specific performance of a contract to assign corporate stock that the bill show that the complainant is entitled to an accounting for the amount of dividends the stock has earned.

2. CORPORATIONS—STOCK—DIVIDEND—DECLARATION—DISCRETION.

When dividends shall be declared, and the amount thereof, are largely discretionary with the officers of a corporation.

3. SAME—STOCKHOLDER'S RIGHT TO COMPEL ACCOUNTING.

Under an agreement that the purchaser of corporate stock should be entitled to dividends thereon "when declared," he is not entitled to an accounting for the amount of dividends earned before a dividend has been declared, where no undue or improper delay in declaring one is shown.

4. SAME—STOCK AS PERSONALTY.

Common stock of a corporation is personalty, and comes within the rules of equity governing an agreement to sell and deliver specific personalty.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 166.]

5. SPECIFIC PERFORMANCE—CONTRACT TO ASSIGN STOCK—RELIEF—NECESSARY PROOF.

One seeking relief under a contract for the assignment of corporate stock must allege and show full performance on his part.

6. SPECIFIC PERFORMANCE—DELIVERY OF PERSONALTY—PROOF—REQUISITES—INADEQUATE REMEDY AT LAW.

To entitle one to specific performance of an agreement to deliver specific personalty usually something more is necessary than a mere allegation of facts, showing that the complainant is entitled thereto. Specific performance is an equitable remedy, and usually it must appear that the party seeking the remedy is without full and adequate remedy at law. Hence one is not entitled to specific performance of a contract to deliver corporate stock where his bill does not show that his remedy at law is inadequate, and that the damages may not be easily estimated, where no element of trust arises.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, § 5.

Right to specific performance as affected by adequacy of remedy at law, see note to Marthinson v. King, 82 C. C. A. 368.]

7. EQUITY—PLEADING—MULTIFARIOUSNESS.

A bill to specifically perform a contract to deliver corporate stock, and for an accounting for dividends that should have been paid to complainant on such stock if it had been transferred when it should have been, and for a money judgment therefor, is not multifarious; the accounting being a mere incident to the specific performance.

8. SAME.

A bill for equitable relief must show, by facts pleaded, that the interposition of a court of equity is necessary or proper; that complainant has no adequate remedy at law.

9. COURTS—GENERAL JURISDICTION—PLEADING—AMOUNT IN CONTROVERSY.

Corporate stock is presumed to be worth par, as affecting pleading in a case where jurisdiction depends upon the amount in controversy.

On Demurrer to Bill of Complaint.

Hugo Gordon Miller, for complainant.
Robinson, Biddle & Benedict, for defendant.

RAY, District Judge. This is an action by complainant to compel the transfer and delivery to him of $9,000 of the common stock of the defendant company, formerly the James Reilly Repair & Supply Company, pursuant to an alleged contract, an accounting for the dividends that should have been paid to complainant on such stock if transferred to him when it should have been, and a money judgment therefor. The grounds of demurrer will be stated later.

The complaint contains the necessary allegations as to diversity of citizenship, the complainant being a citizen of the state of New York, and defendant a New Jersey corporation having a regular and established place of business in the Southern district of the state of New York. There is no direct averment that the amount in controversy, exclusive of interest and costs, is $2,000 or upwards. The bill then alleges that the defendant was incorporated in New Jersey prior to June 9, 1904, under the name the James Reilly Repair & Supply Company, and that July 2, 1907, its name was duly changed to the Griscom-Spencer Company; that on and before said June 9, 1904, the complainant was employed by the defendant corporation in the capacity of its assistant manager, at a salary of $75 per week, and that, as additional compensation for his labor, defendant agreed to assign to him "twenty thousand dollars worth of common stock of the James Reilly Repair & Supply Company," all dividends to be paid to him, and that he was to acquire title to such stock, and it was to be assigned to him at the rate of $3,000 per year. The alleged agreement is evidenced in part by a letter from M. K. Bowman to Bernier, dated June 9, 1904, and Bernier's written acceptance, dated June 13, 1904, set out in full; and the Bowman letter is alleged to have been written and sent "with the full knowledge and under the direction of all the officers and directors of the defendant company." The complaint then alleges that complainant entered upon the discharge of his duties June 9, 1904, under such contract, and continued in such employment up to June 15, 1907, and that he fully performed his part of the contract; that no stock has been assigned or transferred to him, and that he has received no dividends; that the defendant has earned large sums available

for dividends, but none have been declared; that defendant has $112,000 net surplus of funds; that he does not know the amount applicable to dividends, and has no means of ascertaining same; that he has duly demanded the assignment of $20,000 of such stock, and also $3,000 of such stock per annum, but defendant has refused to transfer or assign any of such stock. There is no allegation that defendant has any of its stock not transferred to other parties. There is no allegation as to the amount of the authorized capital stock or common stock of such corporation. There is no allegation as to its actual value, or as to the number of shares into which it is divided. There is no allegation that this common stock cannot be obtained and purchased in the market, and no allegation that it has any peculiar or special value to complainant or any one else.

The demurrer is that the facts stated do not entitle complainant to any of the relief demanded, or to any such relief as is sought or demanded; that there is no privity between the complainant and defendant that entitles him to the relief demanded; that there is a defect of parties, as the defendant's directors should be joined; that several matters are joined in the bill, and it is multifarious; that there is no jurisdiction, as $2,000 is not involved, exclusive of interest and costs; that the bill of complaint does not show facts which entitle complainant to any of the relief demanded. It is clear that this is an action in equity; that the object is to compel the specific performance of a contract to deliver $20,000 worth of the common stock of defendant corporation to the extent of $9,000, the allegations showing that under the agreement complainant has earned and become the absolute owner of that amount in value of such stock. The other relief demanded is purely incidental. While the bill of complaint does not allege that Bowman was the treasurer of the defendant company, I will assume that he was. His letter making the offer reads as follows:

"The James Reilly Repair & Supply Company.
"229 & 230 West Street, New York.
"June 9, 1904.

"Mr. L. L. Bernier, Assistant Manager, 230 West Street, New York—Dear Sir: In accordance with our conversation, I hereby agree to have assigned to your name $20,000 worth of the common stock of the James Reilly Repair & Supply Company, with the undersanding that the dividends when declared be paid you forthwith, and that you shall acquire absolute title to the stock at the rate of $3,000 per annum.

"I further agree to sell you $20,000 worth of additional common stock of the Reilly Company, or any part thereof, at par, at any time within the next five years.

"All of this to be contingent upon your remaining in the Reilly Company's employ, at your present salary of seventy-five dollars per week, and devote all of your time and energy to the advancement of its interests, development of its business and increase of its prosperity; the object of this transaction being to make you vitally interested in the success and welfare of the company.

"Please acknowledge receipt of this letter in writing, with a statement to the effect that you agree to these terms.

"Yours truly,　　　　　　　　　　　　M. K. Bowman."

The acceptance as follows:

"New York, June 13, 1904.

"M. K. Bowman, Esq., Treasurer the James Reilly Repair & Supply Company, 229–230 West Street, New York—Dear Sir: I beg to acknowledge the receipt of your proposition dated June 9, 1904, contingent upon my remaining in the employ of the James Reilly Repair & Supply Company. I thank you for the same and accept it in full, assuring that I will do everything in my power in the future as I have done in the past, to further the interests of the company and prove worthy of the confidence placed in me. Thanking you for this mark of your esteem, I am,

"Yours respectfully,                          Louis L. Bernier."

The agreement contained in the first clause or paragraph is to "have assigned to your name $20,000 worth of the common stock" with the understanding that the dividends, "when declared," be paid forthwith, and that complainant is to acquire absolute title to such stock, at the rate of $3,000 per annum. The second clause or paragraph evidently refers to other stock, for he says "additional common stock." Then comes the declared purpose to make the complainant vitally interested in the affairs of the company. The letter is silent as to whether the assignment of stock is to be of the $20,000 worth at one time and when fully earned, or at the rate of $3,000 per year. The bill of complaint is not very specific on this point, but I think the averment is that the verbal agreement, confirmed by the letter, is that $3,000 worth was to be assigned each year. In any event it is an agreement, on the part of complainant, to perform labor and services as manager at $75 per week and $3,000 worth of stock each year; and, as he was to have $20,000 worth, it is evident the parties contemplated employment for at least about seven years. If the true contract was indefinite or definite on that point, it is a matter of answer.

It is not essential to the statement of a good cause of action for specific performance in the assignment of the stock that the bill of complaint show that the complainant is entitled to an accounting for the amount of dividends the stock has earned. I do not think that the bill shows such a right in complainant, even if it states a good cause of action in equity for specific performance. When dividends shall be declared, and the amount thereof, are largely matters of discretion with the officers of the corporation. Dividends do not necessarily follow net earnings. Complainant was to have the dividends "when declared." There is no allegation of any undue or improper delay in declaring dividends, or that they are delayed for any ulterior purpose. The real question is, has complainant alleged facts which entitle him to a decree for the transfer to him of $9,000 worth of the common stock of this corporation?

Common stock is personal property, and comes within the rules of equity governing an agreement to sell and deliver specific personal property. Of course, full performance by the party seeking relief must be alleged and shown. Complainant says he has fully performed as to three years, and has earned and is entitled to the $9,000 worth. But to entitle a party to specific performance of an agreement for the delivery of specific personal property usually something more is necessary than a mere allegation of facts showing that

the complainant is entitled thereto. Specific performance is an equitable remedy, and usually it must appear that the party seeking the remedy is without full and adequate remedy at law. As, for instance, should A. agree to work for B. for one year at a compensation of $2 per week, with board and lodging, and 10 of the sheep then owned by B., and A. does the work, receives the $2 per week and his maintenance, but B. refuses the sheep, can A. maintain a suit in equity to compel specific performance? If he alleges that the sheep contracted and paid for are of a peculiar breed, of special character and value, and that B. has them, and that they cannot be obtained eleswhere or in the market or have no market value, or that value is fluctuating (possibly) or uncertain, equity would entertain the action and decree performance. Why? For the simple reason it is made to appear that A. has no full, complete, or adequate remedy at law. It would be very difficult, if not impossible to prove the damages. A. could not go into the market and purchase such animals or their equal, or it would not appear that, if he was given money in lieu of performance, he could make himself good. That this same rule applies in the case of stock in corporations is made plain by text-writers, and the great mass of decided cases. 3 Page on Contracts, § 1630, pp. 2469–2472; Lawson on Contracts (2d Ed.) § 493, p. 575; 2 Pomeroy's Equitable Remedies, § 752, pp. 1268, 1269 (volume 6 of Pom. Eq. Jur.); Hyer v. Richmond Traction Company, 168 U. S. 471, 483, 484, 18 Sup. Ct. 114, 42 L. Ed. 547; Krohn v. Williamson (C. C.) 62 Fed. 869, 877, affirmed 66 Fed. 655, 13 C. C. A. 668; Bomeisler v. Forster, 154 N. Y. 229, 239, 48 N. E. 534, 39 L. R. A. 240; New England Trust Co. v. Abbott, 162 Mass. 148, 38 N. E. 432, 27 L. R. A. 271; Treat v. Richardson, 47 Conn. 582; Moulton v. Manufacturing Co., 81 Minn. 259, 83 N. W. 1082; Barton v. De Wolf, 108 Ill. 195; Rigg v. Railway, 191 Pa. 298, 43 Atl. 212; Ryan v. McLane, 91 Md. 175, 46 Atl. 340, 50 L. R. A. 501, 80 Am. St. Rep. 438; Kimball v. Morton, 5 N. J. Eq. 26, 53 Am. Dec. 621; Krouse v. Woodward, 110 Cal. 638, 42 Pac. 1084; North Cent. R. Co. v. Walworth, 193 Pa. 207, 44 Atl. 253, 74 Am. St. Rep. 683; Manton v. Ray, 18 R. I. 672, 29 Atl. 998, 49 Am. St. Rep. 811.

It is, of course, understood that I am not speaking of actions to compel a transfer of stock where the one party holds it in trust for another, or where a party has stock, the certificate having been issued to another, and he seeks to compel its transfer on the books and have a new certificate issued. The right to equitable relief in such cases cannot be questioned. But here a different question is presented.

Lawson on Contracts (2d Ed.) § 493, says:

"A court of equity will not decree a specific performance of a contract for the sale of chattels, because the breach may be sufficiently remedied by damages. If A. refuses to deliver goods he has sold to B., the latter may purchase them elsewhere, and recover the loss to him resulting from A.'s failure to perform. This rule extends to all kinds of personal property, including government bonds and the shares of stock and bonds of business corporations, which are always to be bought in the market. But in the application of this rule three classes of cases are to be excepted, though two of them are not exceptions to but rather further illustrations of the govern-

ing principle, viz., that agreements will not be specifically enforced, unless from the nature of the contract, the character of the subject-matter or other special and peculiar causes damages will not be an adequate remedy."

In 2 Pomeroy, Eq. Remedies (6 Pom. Eq. Jur.) § 752, it is said:

"The right to specific performance of contracts for the sale of corporate stock depends upon the character of the stock. In England it is held that a transfer of public stocks, which are always to be had by any person who chooses to apply for them in the market, will not be decreed, for damages are adequate. Shares of railway and other private corporations, which are limited in number and cannot always be had in the market, stand upon a different footing, and equity may grant its relief. The rules in the United States are narrower, and it would seem, more in accord with principle. Specific performance will not be decreed if the shares are readily obtainable in the open market. If, however, the shares have no market rating, and cannot easily be obtained elsewhere, damages will be inadequate, and specific performance will be granted."

In 3 Page on Contracts, p. 2469, § 1630, it is said:

"Contracts for the sale of corporate stock are controlled by the same principles as those applying to sales of other personal property in general. If the stock is one which is regularly bought and sold, it is easy to estimate in money the damages sustained from the breach. The vendee can then, with the unpaid purchase money and the damages thus recovered, purchase in open market an amount of stock equal to that contracted. In such cases the remedy at law is adequate, and in the absence of special circumstances specific performance will not be decreed. To obtain specific performance it must be shown, further, that special circumstances exist which make the remedy at law inadequate."

In Hyer v. Richmond Traction Company, 168 U. S. 471, 483, 484, 18 Sup. Ct. 114, 119, 42 L. Ed. 547, the Supreme Court, speaking by Mr. Justice Brewer, said:

"But even if it be considered as a contract specifically for the transfer of stock, what is the rule in respect to actions in case of a breach thereof? If stock has a recognized market value, courts will ordinarily leave the parties to their action at law for damages for breach of the agreement to sell, but in cases where the stock has no recognized market value, is not purchasable in the market, or has a value which is not settled, but is contingent upon the future workings of the corporation, equity will sometimes decree specific performance of a contract of purchase. It is in reliance upon this that plaintiff claims the right to a decree for specific performance. The enterprise, he says, is a new one; it is difficult to put a fair pecuniary value on the stock or on the franchise. It is one of those things contingent largely on the successful working of the railway. It must be conceded that there is force in the contention that only by letting the plaintiff into the possession of the interest he claims can adequate compensation be secured. At the same time the present value of the franchise and therefore of the stock of the corporation owning the franchise is not wholly beyond estimate. That which it may have three or four years hence may depend largely upon the matter of management. But it is a franchise which has definite possibilities. The miles of track covered by it, the population adjacent to the line and therefore the number of people likely to avail themselves of its advantages, the cost of construction and of operation, are all well-known facts, and upon such known facts it is not impossible for a jury to form a fair estimate of the value of the franchise, and therefore of the damage which the plaintiff has sustained by the repudiation of the contract to give him a half interest in it."

In Krohn v. Williamson (C. C.) 62 Fed. 869, affirmed 66 Fed. 655, 13 C. C. A. 668, the syllabus applicable reads:

"6. Specific Performance—Jurisdiction—Transfer of Stock. Where jurisdiction is acquired on the ground that the suit is to enforce a trust, the court

may compel performance of an obligation to transfer stock, the subject of such trust, the value of which is uncertain."

At page 877 of 62 Fed., page 668 of 13 C. C. A., Taft, Circuit Judge, said:

"It is true that the relief asked is in the nature of a decree 'for the specific performance of an obligation to transfer personal property, and that ordinarily courts of equity will not afford such a remedy. The modern tendency of courts, however, is towards a much more liberal rule in this regard; and, if any good reason appears why damages for conversion will not be adequate remedy for the injury a decree will be granted. Here the stock has no market value. The damage for conversion would be wholly speculative and uncertain. But the controlling reason why in this case the delivery of the stock in specie should be decreed is that the defendants hold it in trust for the complainant. The confidential relation in violation of which defendants seek to retain its possession, gives the complainant the option either to have the stock or its value. The court, as a court of equity, acquires jurisdiction of the action, not because damages at law would be inadequate, but because it is an action to enforce a trust, and, having jurisdiction on this ground, may give such full relief as the nature of the case requires. Johnson v. Brooks, 93 N. Y. 337; Stanton v. Percival, 5 H. L. Cas. 257; Cowles v. Whitman, 10 Conn. 121, 25 Am. Dec. 60; Kimball v. Morton, 5 N. J. Eq. 26, 53 Am. Dec. 621; Pom. Eq. Jur. § 14."

In Bomeisler v. Forster, 154 N. Y., at page 239, 48 N. E., at page 535, 39 L. R. A. 240, the court said:

"The rule of specific performance will be extended to personal contracts, where the party wants the thing in specie, and he cannot otherwise be compensated. Phillips v. Berger, 2 Barb. 608; Story's Eq. Jur. § 716. That is to say, the extension of the rule to such cases is justified where there would not be a complete and satisfactory remedy by compensation in damages, or where the benefits of the contract would not inure fully to the party, in whose favor it was made, unless it was specifically performed."

It is not necessary to quote further from the authorities. There is no allegation in the bill tending to show that the remedy at law is not full and adequate; that damages may not easily be estimated. There is no element of trust. There is no multifariousness, as an accounting for and payment of the dividends declared, or that should have been declared if any, is a mere incident to the specific performance, when proper grounds for specific performance are alleged. It may be thought that the want of grounds for the interposition of a court of equity should be set up by way of answer—alleged as a defense. But such is not the law. The complainant, on coming into a court of equity for equitable relief, must show by facts pleaded that the interposition of a court of equity is necessary or proper; that he has no full and adequate remedy at law. By reference to the numerous cases cited in 3 Page on Contracts, supra, it will be seen where equity will or will not compel specific performance of a contract to sell and transfer stock in a corporation.

It may be suggested that a bill of complaint, where jurisdiction depends on diversity of citizenship and the amount in controversy, should contain a definite allegation as to both facts, but I need not enter on that phase of this case. Twenty thousand dollars worth of stock at one time, the time when it was to be transferred, may not

be 20 cents worth when suit is brought. However, the presumption is that stock is worth par.

The demurrer must be sustained for the reasons stated. Complainant may amend in 20 days, on payment of taxable costs to date, such costs to be taxed by the clerk.