# MARYE *v.* BALTIMORE AND OHIO RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF VIRGINIA.

No. 223.   Argued and Submitted April 12, 1888. — Decided April 23, 1888.

While it is quite competent for the State of Virginia to impose upon the movable personal property of the Baltimore and Ohio Railroad Company, (a corporation organized under the laws of Maryland,) which is brought within its territory and there habitually used and employed, the same rate of taxation which is imposed upon similar property used in like way by its own citizens, it has not done so in the taxing laws of the State which were in force when the tax in controversy was imposed.

The statutes of Virginia relied upon by the plaintiff in error are not applicable to the Baltimore and Ohio Railroad Company, but are confined to corporations which derive their authority from the laws of Virginia.

THIS was a bill in equity filed by the Baltimore and Ohio Railroad Company against the taxing officer of the State of Virginia, for the purpose of enjoining him from selling certain engines and cars, the property of the complainant, for the payment of a tax alleged to have been illegally assessed thereon. There was a decree in the Circuit Court granting the relief prayed for, from which this appeal was prosecuted.

The material facts in the case were these: The Baltimore and Ohio Railroad Company is a corporation organized under the laws of Maryland, and a citizen thereof, by virtue of whose charter its rolling stock is exempt from taxation. The line of its road does not at any point lie in the State of Virginia. It, however, connects with certain roads belonging to corporations incorporated by various acts of the legislature of Virginia, to wit: the Winchester and Potomac Railroad, the Winchester and Strasburg Railroad, and the Strasburg and Harrisonburg Railroad, the last named being a part of the old Manassas Gap Railroad; and during a portion of the time embraced in the period for which the taxes in question were levied it worked the Valley Railroad from Harrisonburg to

Staunton.   All of these roads were operated by the Baltimore and Ohio Railroad Company by virtue of leases or contracts, which company for that purpose furnished and used its own rolling stock, consisting of engines and cars.   None of the Virginia corporations owning either of these roads was the owner of any rolling stock.   The manner in which this rolling stock was employed for this purpose was thus described : "There is no such rolling stock assigned permanently to the four lines above named, or either of them, in the State of Virginia.   The trains in which the rolling stock is used on the four lines above named now start from Lexington, Virginia, and pass through the State of Virginia, over the four lines of railroad above named, into the State of West Virginia, and thence into the State of Maryland to the city of Baltimore, or if any of the cars are destined to western points, thence from Harper's Ferry to the West, but the trains in which the cars are hauled are run solid from Lexington, Virginia, (and formerly before the road was completed to Lexington from Staunton, Virginia,) to Baltimore.   None of the rolling stock is assigned permanently to service in the State of Virginia, nor is any of the rolling stock set apart to the four lines in that State, or to the four valley lines above mentioned at all ; but such rolling stock is used interchangeably upon the main line and branches of the Baltimore and Ohio Railroad in the States of Maryland and Virginia, and indeed, also, upon the divisions of the Baltimore and Ohio Railroad in Pennsylvania, and in States west of the Ohio River, just as the necessities of the service of the company require.   Sometimes this rolling stock will be found on the main line, sometimes on the Pittsburg division, and sometimes on the trans-Ohio divisions, and there is none of it that is permanently set apart for use upon the four valley lines in Virginia above described."

The several Virginia corporations owning these four railroads, respectively, made their annual reports to the auditor of public accounts as required by law, and were by the board of public works duly assessed on their roadways, tracks, depots, and other real estate owned by them.   No tax was assessed or levied as against them on account of any rolling stock,

because they were not reported to be the owners of any. In the month of June, 1883, the auditor of public accounts for the State of Virginia assessed the Baltimore and Ohio Railroad Company for taxes on its rolling stock used on these roads for the years from 1870 to 1881, inclusive, amounting in the aggregate for eleven years to the sum of $22,249.25, and placed the assessment in the hands of the treasurer of Augusta County, Virginia, for collection. This officer was proceeding to collect these taxes by a distraint of the rolling stock in question, the property of the complainant, when his proceedings were arrested by the injunction of the Circuit Court, afterward made perpetual by its final decree.

The act of the General Assembly of the State of Virginia, under which the assessment and collection of these taxes were sought to be justified, is contained in § 20, c. 119, of the acts of the Virginia legislature, session of 1881–1882, being part of the taxing laws of the State originally enacted in 1870 and 1871, and continued with amendments to the present time. The material part of the act applicable to this case was as follows:

"19. Every railroad and canal company not exempted from taxation by virtue of its charter shall report annually on the first day of June, to the auditor of public accounts, all of its real and personal property of every description as of the first day of February of each year, showing particularly in what county or corporation such property is located, and classifying the same under the following heads:

"First. Roadway and track, or canal bed.

"Second. Depots, depot grounds and lots, station buildings and fixtures and machine shops.

"Third. Real estate not included in other classes.

"Fourth. Rolling stock, including passenger, freight, cattle, or stock; baggage, mail, express, sleeping, palace, and all other cars owned by or belonging to the company; boats, machinery, and equipments; houses and appurtenances occupied by lockgate keepers and other employés.

"Fifth. Stores.

"Sixth. Telegraph lines.

" Seventh. Miscellaneous property.

" Every such company shall report, on or before the first day of June of each year, the gross and net receipts of the road or canal for the twelve months preceding the first day of February of each year, and in all cases the report shall be so made as to give the data on which the same is made. If such road or canal is only in part within the Commonwealth, the report shall show what part is within the Commonwealth and what proportion the same bears to the entire length of the road or canal, and shall apportion the receipts accordingly. The reports herein required shall be verified by the oath of the president or other proper officer. Upon the receipt of every such report it shall be the duty of the auditor of public accounts to lay the same before the board of public works, who shall, after thirty days' notice previously given to the president, treasurer, or other proper officer, proceed to ascertain and assess the value of the property so reported, upon the best and most reliable information that can be procured; and to this end shall be authorized and empowered to send for persons and papers should it be deemed necessary. A certified copy of the assessment, when made, shall be immediately forwarded by the secretary of the board to the president or other proper officer of every railroad or canal company so assessed, whose duty it shall be to pay into the treasury of the State, within sixty days after the receipt thereof, the tax which may be imposed thereon by law. A company failing to make such report, or to pay the tax assessed upon its property, shall be immediately assessed, under the direction of the auditor of the public accounts, by any person appointed by him for the purpose, rating their real estate and rolling stock at twenty thousand dollars per mile; and a tax shall at once be levied on such value at the annual rate levied upon the value of the other property for the year. Such tax so levied, as well as the sum required to be paid upon the report hereinbefore mentioned, if the same be not paid at the time provided herein, shall be collected by the treasurer of some county in which such company owns property, to whom the auditor may deliver the assessment or a copy thereof. The treasurer

may distrain and sell any personal property of such company, and shall pay the taxes into the treasury within three months from the time of the assessment, or a copy as aforesaid may be delivered to him. The compensation of such treasurer to be the same as he receives for collecting other taxes in his county or corporation."

It is admitted that this is the only legislation of the State of Virginia under which the tax in question can be justified; if it does not warrant the proceedings, there is no statute which does. The single question presented in the case is whether the Baltimore and Ohio Railroad Company, as to the property on account of which it is sought to be taxed, is liable to taxation under the provisions of this act.

*Mr. R. A. Ayers*, Attorney General of Virginia, for plaintiff in error, submitted on his brief, in which he contended as follows:

The issue is a very narrow one, and will be presented to the court in a few words.

The State of Virginia contends that the facts of this case do not fall within the principle, now well established by a continuous line of decisions, that no State has the power of imposing any burden upon interstate commerce or the instruments by which it is carried on between any other State and the State imposing the burden. The State of Virginia did not attempt to impose a tax upon every car or locomotive run into the State during the year, but assessed for taxation the property in *constant* use in the State. There was no hardship in this; the Company enjoyed the constant protection of the laws of Virginia for its property, and it was but fair and just that it should bear its due proportion of the expenses of the government which extended the protection. The Baltimore and Ohio Railroad Company does not run its cars from Baltimore under its Maryland charter, but comes to Virginia and leases lines from Virginia companies, obligates itself to furnish cars and run trains regularly, the right to do which it derives only from the franchises of the Virginia corporations.

The Virginia corporations hold their franchises upon the condition that they perform their duty to the public as common carriers by running trains and furnishing transportation for both freight and passengers.

All these obligations are assumed, agencies are established along the line, the necessary trains are put on and run regularly. The same cars and engines may not always be in the State, but a *certain number* of engines and cars are always in the State.

The Company, by coming to Virginia and leasing these lines of road, and incurring the obligation to operate them with engines and cars and run regular trains upon them, had voluntarily changed the *situs* of so much of its rolling stock as is in constant use upon the lines in Virginia, and it is therefore liable to taxation to that extent in Virginia.

The decree of the Circuit Court is erroneous, and should be reversed.

No authorities are cited, because the general principle that the instruments of interstate commerce are exempt from taxation by any other State than the one in which they have their *situs* is well established, and the question involved here is not whether if the *situs* of the property is in Baltimore is it liable to taxation; but is, whether from the facts proved the *situs* of the property assessed for taxation is not in the State of Virginia.

The acts of the General Assembly under which the assessment was made and the collection of the tax bill were printed with the brief of *Mr. Ayers.*

*Mr. Hugh W. Sheffey* and *Mr. John K. Cowen,* (with whom was *Mr. Hugh L. Bond, Jr.,* on the brief,) for defendant in error, contended as follows in regard to the *situs* of the property.

. The authorities are clear that in the absence of legislation to the contrary, the *situs* for taxation of the personal property of a corporation is at its domicile, which is the State of its creation, and within that State, in the town where it has its

principal office or place of business.   Burroughs on Taxation, 186; *Orange & Alexandria Railroad Co.* v. *Alexandria*, 17 Grattan, 176; *Philadelphia, Wilmington, & Baltimore Railroad* v. *Appeal-Tax Court*, 50 Maryland, 397, 415; *Appeal Tax Court* v. *Pullman Palace Car Co.*, 50 Maryland, 452; *Appeal Tax Court* v. *Northern Central Railway Co.*, 50 Maryland, 417; *St. Louis* v. *The Ferry Co.*, 11 Wall. 425; *Hays* v. *Pacific Mail Steamship Co.*, 17 How. 596; *Pacific Railroad Co.* v. *Cass County*, 53 Missouri, 17, 31, 32.

MR. JUSTICE MATTHEWS, after stating the case, delivered the opinion of the court.

It is not denied, as it cannot be, that the State of Virginia has rightful power to levy and collect a tax upon such property used and found within its territorial limits, as this property was used and found, if and whenever it may choose, by apt legislation, to exert its authority over the subject.   It is quite true, as the *situs* of the Baltimore and Ohio Railroad Company is in the State of Maryland, that also, upon general principles, is the *situs* of all its personal property; but for purposes of taxation, as well as for other purposes, that *situs* may be fixed in whatever locality the property may be brought and used by its owner by the law of the place where it is found.   If the Baltimore and Ohio Railroad Company is permitted by the State of Virginia to bring into its territory and there habitually to use and employ a portion of its movable personal property, and the railroad company chooses so to do, it would certainly be competent and legitimate for the State to impose upon such property, thus used and employed, its fair share of the burdens of taxation imposed upon other similar property used in the like way by its own citizens. And such a tax might be properly assessed and collected in cases like the present where the specific and individual items of property so used and employed were not continuously the same, but were constantly changing, according to the exigencies of the business.   In such cases the tax might be fixed by an appraisement and valuation of the average amount of the

property thus habitually used, and collected by distraint upon any portion that might at any time be found. Of course, the lawfulness of a tax upon vehicles of transportation used by common carriers might have to be considered in particular instances with reference to its operation as a regulation of commerce among the States, but the mere fact that they were employed as vehicles of transportation in the interchange of interstate commerce would not render their taxation invalid. No question on that account arises in this case.

But looking at the statute under which the proceeding in question has been taken for the taxation of this property, we think it quite clear that it has no application to the rolling stock owned by the Baltimore and Ohio Railroad Company employed by it in the manner described in the operation of other railroads in Virginia. The terms of the act, indeed, include "every railroad and canal company not exempted from taxation by virtue of its charter," but that language, according to a general rule of interpretation, must be confined to corporations deriving their authority from the laws of Virginia. It is apparent, also, from the other expressions contained in the law, as well as its whole purview, that it was intended to apply only to such domestic corporations, as in the case of railroad companies, were the owners of railroads and the property usually appurtenant thereto, lying and being within the State. According to the description of the act, the railroad company is supposed to own a roadway and track, and depots, depot grounds, station buildings and fixtures, and machine shops, together with real estate, rolling stock, and telegraph lines. Every such company is required to report its gross and net receipts, and a specific provision is made that if its road is only in part within the Commonwealth the report shall show what part is so, and what proportion the same bears to its entire length, apportioning the receipts accordingly. In case of a failure of the company to make such a report, or to pay the tax assessed upon its property, it is provided that it shall be immediately assessed under the direction of the auditor of public accounts by some person appointed by him for that purpose, rating its real estate and rolling stock at $20,000 per

mile, on which a tax shall be levied at the annual rate levied upon the value of other property for the year. None of these provisions are applicable to the case of the Baltimore and Ohio Railroad Company in respect to its ownership of the rolling stock in question.

It follows from this that it was not liable for the payment of the taxes, the collection of which was enjoined by the decree of the Circuit Court. That decree is accordingly

*Affirmed.*