**TOWN OF BETHEL v. ATLANTIC COAST LINE R. CO.**

**No. 3929.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 6, 1936.

M. K. Blount, of Greenville, N. C. (Blount & James, of Greenville, N. C., on the brief), for appellant.

Thomas W. Davis, of Wilmington, N. C. (W. B. Rodman, Jr., of Washington, N. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and COLEMAN, District Judge.

SOPER Circuit Judge.

The Atlantic Coast Line Railroad Company filed a bill in equity in the District Court to secure an injunction against the town of Bethel in North Carolina restraining it from laying a pavement on the railroad right of way through the town and from levying an assessment therefor upon the Railroad Company. The court assumed jurisdiction of the case and rendered a decree in the railroad's favor. It was adjudged that the Railroad Company is the owner of the right of way, and the town was enjoined from assessing it with any portion of the costs of the pavement, but was permitted to complete the work, since it had already been begun, without prejudice to the right of the Railroad Company upon reasonable notice to require the town to remove the pavement at its own expense. The town appealed.

We express no opinion upon the merits of the controversy, for we have reached the conclusion that the District Court was without jurisdiction in the premises. Jurisdiction was based in the bill of complaint upon diverse citizenship, the Railroad Company alleging that it was a Virginia corporation suing a municipal corporation created under the laws of North Carolina to protect a property right of more than $3,000 in value. We are convinced, however, from an examination of the corporate history of the Railroad Company that it is not only a Virginia but also a North Carolina corporation, and that it can maintain the present suit only in the latter capacity. Hence diversity of citizenship does not exist.

The Atlantic Coast Line Railroad Company came into being through a series of consolidations or mergers, of which the first was the consolidation of the Richmond & Petersburg Railroad Company, a Virginia corporation, and the Petersburg Railroad Company, which was incorporated both in Virginia and in North Carolina. The Petersburg Railroad Company was incorporated by an act of the General Assembly of Virginia of February 10, 1830, Laws of

1830, c. 62, p. 59,* to construct a railway from some point in Petersburg to some convenient point on the North Carolina line. In the same year, the General Assembly of North Carolina passed an act to be found in the Revised Statutes of North Carolina of 1836–37, vol. 2, p. 275, wherein this Virginia charter was set out in full, and it was recited that it was proposed by the Petersburg Railroad Company to continue the railroad through that part of North Carolina between the Virginia line and the Roanoke river, and that the consent of the Legislature of North Carolina was requested to the Virginia act to enable the company to construct the road. By the enacting clause, the assent of the Legislature to the Virginia act to incorporate the Petersburg Railroad Company was as fully given "as if the said act had been passed by this present General Assembly" with certain exceptions and additions relating to the mode of acquisition of the necessary property for the railroad in North Carolina and the location of the railroad in that state; and the duration of the act was limited to sixty years "and no longer without a renewal of the charter." By the acts of North Carolina of March 9, 1891, c. 540, and March 1, 1893, c. 149, "the charter of incorporation granted to the Petersburg Railroad Company by the General Assembly of North Carolina at the session of 1830" was extended and renewed for an additional term of sixty years.

The Richmond & Petersburg Railroad was incorporated by an act of the Legislature of Virginia of March 14, 1836 (Acts 1835–36, c. 121, p. 146), for the purpose of making a railroad between the city of Richmond and the town of Petersburg. By an act of the Virginia Legislature of March 1, 1898 (Acts 1897–98, c. 635, p. 674), the Petersburg Railroad Company was authorized to consolidate with and to convey all of its property and franchises to this corporation, and the consolidated company was authorized to change its name to the Atlantic Coast Line Railroad Company of Virginia. By virtue of this power, the Petersburg Railroad Company conveyed all of its property and franchises to the Richmond & Petersburg Railroad Company, including that portion of the railroad in North Carolina. See Lee v. Atlantic Coast Line R. Co. (C.C.) 150 F. 775, 776. By the act of the Legislature of North Carolina of Feb-ruary 13, 1899 (chapter 77, Public Laws of 1899, p. 208), this consolidation and conveyance of the North Carolina portion of the Petersburg Railroad Company to the consolidated corporation were ratified and approved and the Atlantic Coast Line Railroad Company of Virginia was created "a body politic and corporate in the state of North Carolina" (section 2) with the right to have all the general powers and be subject to all the general restrictions imposed by the law of the state to and upon railroad companies. Specifically it was given all the powers and made subject to all the restrictions "except the restriction as to the term to which its charter is limited, granted and imposed by the charter of the said Petersburg Railroad Company or any amendments thereto under the laws of the state of North Carolina." Section 3.

Prior to this consolidation, the Atlantic Coast Line Railroad Company of South Carolina had been formed through the consolidation of certain railroad corporations of South Carolina under an act of the Legislature of that state of March 5, 1897 (No. 151 of the South Carolina Laws of 1897, 22 St. at Large, p. 653). The Code of Civil Statute Laws of South Carolina of 1894, c. 51, art. 3, § 1615 et seq., gave power and authority upon certain conditions to any railroad organized and operating under the laws of the state to merge and consolidate with any other railroad company operating under the laws of that or any other state whenever the railroads proposed to be consolidated should form a continuous line of railroad with each other or by means of any intervening railroad.

The line of railroad operated by the Atlantic Coast Line Railroad Company of Virginia, as above consolidated, connected with the line of railroad owned and operated by the Wilmington & Weldon Railroad Company in the State of North Carolina, in which the town of Bethel was located; and the line of the latter railroad connected with the line of railroad owned and operated by the Atlantic Coast Line Railroad Company of South Carolina as above consolidated, so that the lines of the three railroads formed a continuous line of railroad in the states of Virginia, North Carolina, and South Carolina. See Lee v. Atlantic Coast Line R. Co. (C.C.) 150 F. 775, 777.

The Wilmington & Weldon Railroad

---

*We have taken judicial notice of certain acts of the Legislatures of Virginia, North Carolina, and South Carolina not found in the record. Peterborough R. R. v. B. & M. R. R. (C.C.A.) 239 F. 97.

Company was authorized to change its name to the Atlantic Coast Line Railroad Company of North Carolina, and "to consolidate or to merge its railroad with, or to buy or lease" any other railroad organized under the laws of North Carolina or of any adjoining state with which it might connect either directly or indirectly, by an act of the Legislature of North Carolina of February 24, 1899 (chapter 105 of the Private Laws of North Carolina of 1899, p. 212). By this act it was provided·:

"Such consolidation, merge, sale or lease may be made between the Wilmington and Weldon Railroad Company and any other such company upon such terms and conditions as may be agreed upon by a majority of the stockholders of each corporation entitled to vote at all stockholders' meetings; and on like terms and conditions the said Wilmington and Weldon Railroad Company may sell or lease in whole or in part any of its railroads to any other such railroad company, and power hereby is given to any other such railroad company organized under the laws of this or of any adjoining state, to take such lease or to make such purchase; * * * *Provided, that this act shall not have the effect of ousting the jurisdiction of the courts of this state over causes of action arising within the state: Provided, further, that any and all corporations consolidated, leased or organized under the provisions of this act shall be domestic corporations of North Carolina and shall be subject to the laws and jurisdiction thereof.*" (Italics inserted.)

On January· 12, 1900, the Legislature of Virginia passed an act (Acts of 1899–1900, c. 18, p. 24), by which it authorized the Atlantic Coast Line Railroad Company of Virginia to change its name to the Atlantic Coast Line Railroad Company and to "consolidate with itself, or purchase or otherwise acquire" any other railroad company incorporated by the laws of the United States or of any of the states thereof.

Thereafter, on April 18, 1900, a deed and agreement of consolidation or merger was executed by and between the following parties therein described as the Norfolk & Carolina Railroad Company, a corporation created under the laws of Virginia and North Carolina, the Wilmington & Weldon Railroad Company, a corporation created under the laws of North Carolina, the Southeastern Railroad Company, a corporation created under the laws of North Carolina, the Atlantic Coast Line Railroad Company of South Carolina, a corporation ·created under the laws of South Carolina and North Carolina, *and the Atlantic Coast Line Railroad Company of Virginia, a corporation created under the laws of Virginia and North Carolina.* The deed recited that it was proposed to consolidate the other railroads named in the deed with the Atlantic Coast Line Railroad Company of Virginia and to change its name to the Atlantic Coast Line Railroad Company under the authority of the Act of Virginia of January 12, 1900, above referred to; and that to this end it was proposed to consolidate with the Wilmington & Weldon Railroad that portion of the property and franchises of the other railroads mentioned, situated in North Carolina (including the Atlantic Coast Line Railroad Company of Virginia), under the authority of the Act of North Carolina of February 24, 1899, above mentioned, and then, under the same authority, to consolidate the Wilmington & Weldon Railroad with the Atlantic Coast Line Railroad Company of Virginia; and that it was also proposed to consolidate the Atlantic Coast Line Railroad Company of South Carolina with the Atlantic Coast Line Railroad Company of Virginia under the authority of the acts of South Carolina above referred to.

Pursuant· to these purposes, each of the parties to the deed, excepting the Wilmington & Weldon Railroad Company, but including the Atlantic Coast Line Railroad Company of Virginia, consented and agreed that the portion of its line situated in North Carolina, together with the franchises granted to it by the state of North Carolina, should be merged and consolidated with and sold to the Wilmington & Weldon Railroad Company; and the latter company consented and agreed to such consolidation, merger, and sale; and conveyances of the property and franchises described were accordingly made. The Wilmington & Weldon Railroad Company on its part consented and agreed that the whole of the property thus acquired should be merged and consolidated with and sold to the Atlantic Coast Line Railroad Company of Virginia; and to that end, conveyances from the Wilmington & Weldon Railroad Company to the Atlantic Coast Line Railroad Company were accordingly made which included not only the lines of the Wilmington & Weldon Railroad Company proper, but also the above described portions of the lines of the other parties to·

the indenture which had been merged and consolidated with the Wilmington & Weldon Railroad Company.

The Atlantic Coast Line Railroad Company of South Carolina also consented and agreed that the whole of its railroad and franchises in South Carolina should be merged and consolidated with and sold to the Atlantic Coast Line Railroad Company of Virginia which formed a continuous line of railroad by means of an intervening railroad; and the latter company consented and agreed to such consolidation, merger and sale, and to that end the whole of the main line of the Atlantic Coast Line Railroad Company of South Carolina and all the branches thereof located in South Carolina, together with all the franchises of the grantor, were accordingly conveyed.

The Norfolk & Carolina Railroad Company also consented and agreed that the whole of its railroad and property situated in the state of Virginia, as well as its franchises, should be merged and consolidated with and sold to the Atlantic Coast Line Railroad Company of Virginia, and the latter road consented and agreed to such consolidation, merger and sale, and conveyances to that end were accordingly made.

The Atlantic Coast Line Railroad Company of Virginia on its part covenanted that it accepted the act of the Legislature of Virginia of January 12, 1900, and would change its name as aforesaid; that it would perform all the duties and obligations of the Norfolk & Carolina Railroad Company and of the Wilmington & Weldon Railroad Company and of the Atlantic Coast Line Railroad Company as common carriers; that it would deliver to said railroad companies certain shares of preferred and common stock to be issued by the Atlantic Coast Line Railroad Company and to be used for exchange with the stockholders of said corporations for the shares of stock held by them therein; and that it would issue certain certificates of indebtedness to be used to retire the outstanding obligations of the Southeastern Railroad Company and to be used with the stock transferred to the Atlantic Coast Line Railroad Company of South Carolina in exchange with its stockholders for the shares of their capital stock. A trustee was appointed to receive the new stock to be issued and to make the exchange described and to cancel the old stock received in exchange.

This review shows quite clearly that from the beginning, the line of railroad under consideration has been operated under charters from both Virginia and North Carolina. It was so a century ago when the line was first projected from Petersburg, Va., to the Roanoke river in North Carolina; and in 1898–1899 when the first merger and consolidation of the Petersburg Railroad Company with the Richmond & Petersburg Railroad Company took place and the name of the Atlantic Coast Line Railroad Company of Virginia was adopted; and in 1900 when the greater consolidation with the groups of railroads in North Carolina and South Carolina occurred and the further change of name took place. Each step of the way was accompanied by legislative action in both states setting up and continuing a corporate charter in each. The incorporators of the Petersburg Railroad Company in 1830 sought and obtained a charter in each state. The Acts of North Carolina of 1891 and 1893 extended and renewed this charter for an additional term of sixty years. Again in 1898 and 1899 there was legislative sanction of the consolidation of the Petersburg Railroad Company with the Richmond & Petersburg Railroad Company not only by the Legislature of Virginia but also by the Legislature of North Carolina; and the latter state in its Act of February 13, 1899, expressly created the Atlantic Coast Line Railroad Company of Virginia, a body politic and corporate in that state. It was also expressly provided by the Act of North Carolina of February 24, 1899, under which the merger and consolidation of 1900 took place, that any and all corporations consolidated or organized under the provisions of the act should be domestic corporations of North Carolina, subject to the laws and jurisdiction thereof; and so when the deed of April 18, 1900 was executed, the Atlantic Coast Line Railroad Company of Virginia described itself as "a corporation created and organized under the laws of the States of Virginia and North Carolina." It would be difficult to find a clearer demonstration of the legislative intent to create a North Carolina corporation, or a more complete recognition of the fact that this purpose had actually been carried out.

The appellee nevertheless contends that the deed of April 18, 1900, created a merger, whereby only the Atlantic Coast Line Railroad Company survived and the other corporations ceased to exist; and that the provisions of the acts of North Carolina that a corporate body merged or consolidated thereunder should be a domestic corpora-

tion of the state were ineffective to affect the citizenship of the surviving corporation in relation to the jurisdiction of the federal courts. These courts have recognized that it is futile to attempt to reconcile the decisions dealing with the conflicts that have arisen in the exercise of the power of a state to exclude a foreign corporation from doing business within its borders, and the exercise of the power of the federal government under the provisions of the Federal Constitution to grant to such a corporation the right to resort to the federal courts. See St. Louis & San F. Railway Co. v. James, 161 U.S. 545, 562, 16 S.Ct. 621, 40 L.Ed. 802; Terral v. Burke Const. Co., 257 U.S. 529,. 532, 42 S.Ct. 188, 66 L.Ed. 352, 21 A.L.R. 186. It is established, however, that a state statute is unconstitutional which forbids a resort to the federal courts on the ground of diversity of citizenship by a person or corporation conducting a business within the state, and that when an issue arises as to the right of removal, it is a federal question determinable by the courts of the United States. Harrison v. St. Louis & San F. Railway Co., 232 U.S. 318, 34 S. Ct. 333, 58 L.Ed. 621, L.R.A. 1915F, 1187. Nor may a state exact from a foreign corporation doing business therein a waiver of its constitutional right to resort to the federal courts as a condition of the further exercise of the privilege. As was said in Terral v. Burke Const. Co., 257 U.S. 529, 532, 42 S.Ct. 188, 189, 66 L.Ed. 352, 21 A.L.R. 186:

"The principle established by the more recent decisions * * * does not depend for its application on the character of the business the corporation does, whether state or interstate, although that has been suggested as a distinction in some cases. It rests on the ground that the federal Constitution confers upon citizens of one state the right to resort to federal courts in another, that state action, whether legislative or executive, necessarily calculated to curtail the free exercise of the right thus secured is void because the sovereign power of a state in excluding foreign corporations, as in the exercise of all others of its sovereign powers, is subject to the limitations of the supreme fundamental law."

On the other hand, the right of a foreign corporation to institute suits in the federal courts or to remove suits to these courts may be restricted if the corporation has been organized not only in the foreign but also in the domestic state. In Martin v. Baltimore & Ohio Railroad Co., 151 U.S. 673, 677, 14 S.Ct. 533, 535, 38 L.Ed. 311, it was said:

"A railroad corporation created by the laws of one state may carry on business in another, either by virtue of being created a corporation by the laws of the latter state also, as in [Indianapolis & St. L.] Railroad Co. v. Vance, 96 U.S. 450 [24 L.Ed. 752]; Memphis & Charleston Railroad v. Alabama, 107 U.S. 581, 2 S.Ct. 432 [27 L.Ed. 518]; Clark v. Barnard, 108 U.S. 436, 2 S.Ct. 878 [27 L.Ed. 780]; Stone v. Farmers' Co., 116 U.S. 307, 6 S.Ct. 334, 388, 1191 [29 L.Ed. 636]; and Graham v. Boston, Hartford & Erie Railroad, 118 U.S. 161, 6 S.Ct. 1009 [30 L.Ed. 196]; or by virtue of a license, permission, or authority, granted by the laws of the latter state, to act in that state under its charter from the former state. Baltimore & O. Railroad Co. v. Harris, 12 Wall. 65 [20 L.Ed. 354]; Baltimore & O. Railroad Co. v. Koontz, 104 U. S. 5 [26 L.Ed. 643]; Pennsylvania Railroad Co. v. St. Louis, etc., Railroad, 118 U.S. 290, 6 S.Ct. 1094 [30 L.Ed. 83]; Goodlett v. Louisville & Nashville Railroad, 122 U.S. 391, 7 S.Ct. 1254 [30 L.Ed. 1230]; Marye v. Balto. & Ohio Railroad, 127 U. S. 117, 8 S.Ct. 1037 [32 L.Ed. 94]. In the first alternative, it cannot remove into the circuit court of the United States a suit brought against it in a court of the latter state by a citizen of that state, because it is a citizen of the same state with him. Memphis & Charleston Railroad Company v. Alabama, above cited. In the second alternative, it can remove such a suit, because it is a citizen of a different state from the plaintiff. Baltimore & O. Railroad Co. v. Koontz, above cited.* *

---

** In contrast with this statement it was said in Louisville N. A. & C. Ry. Co. v. Louisville Trust Co., 174 U.S. 552, 562, 563, 19 S.Ct. 817, 43 L.Ed. 1081, that a corporation first created in Indiana, even if afterwards incorporated in Kentucky, remained with reference to the jurisdiction of the federal courts a citizen of Indiana, and could not sue, as a corporation of both states a citizen of either state, nor sue or be sued as a Kentucky corporation in any court of the United States. The conclusion seems to have been based on the theory broached in St. Louis & San F. Railway Co. v. James, 161 U.S. 545, 16 S.Ct. 621, 40 L.Ed. 802, and referred to in Southern Railway Company v. Allison, 190 U.S. 326, 23 S.

"Whether the Baltimore & Ohio Railroad Company had the right to remove into the circuit court of the United States this action, brought against it by a citizen of West Virginia in a court of that state, therefore, depends upon the question whether this company was a corporation created by the laws of Maryland only, or by the laws of West Virginia also."

Whether a state has or has not created a domestic corporation or merely granted a license to a foreign corporation is a matter of interpretation. Goodlett v. Louisville & Nashville Railroad Co., 122 U.S. 391, 406, 7 S.Ct. 1254, 30 L.Ed. 1230. But even if the legislative intent to grant a domestic charter is clear, it is still necessary to determine whether the grant and acceptance of the charter by the corporation was voluntary and free, as in Patch v. Wabash R. Co., 207 U.S. 277, 282, 28 S.Ct. 80, 52 L.Ed. 204, 12 Ann.Cas. 518, or was done under compulsion as is indicated in St. Louis & San F. Railway Co. v. James, 161 U.S. 545, 16 S. Ct. 621, 40 L.Ed. 802, and Southern Railway Co. v. Allison, 190 U.S. 326, 23 S.Ct. 713, 47 L.Ed. 1078; and these questions may arise not only in suits against but in suits by the corporation, when it becomes important to decide in what capacity or under what citizenship the corporation plaintiff or defendant appears. In the present case, there can be no doubt that the Legislature of North Carolina intended to create domestic corporations, or that the consolidating corporations sought North Carolina charters in order to acquire and operate railroad properties in that state. This was the view obviously entertained by Ruffin, C. J., in considering an information to enforce a forfeiture of the North Carolina charter granted to the Petersburg Railroad Company in 1830 in the case of Attorney General v. Petersburg Railroad Company (reported as Attorney General v. Petersburg & Roanoke Railroad Co.) 28 N.C. (6 Iredell's Law) 456; and more recently it was the view of the same court, speaking through Judge Connor in Staton v. Railroad Co., 144 N.C. 135, 56 S.E. 794, in deciding that after the consolidation of 1900 the Atlantic Coast Line Railroad Company had no right of removal to the federal court of suits brought against it in the state courts of North Carolina.

We are asked to disregard the latter decision because the court depended for its facts on the reports of the Railroad Company to the Corporation Commission of North Carolina and did not have access to the deed of April 18, 1900. It is said that what then took place was not the creation by the state of North Carolina of a new corporation through the consolidation of old ones, but a merger whereby the Virginia corporation, enlarged by the absorption of corporations of adjoining states, alone retained its existence. It seems quite clear, however, that if the court's attention had been called to the precise distinction sometimes observed between a consolidation and a merger, it would have held that a domestic corporation was created under the act not only by a strict consolidation but also by a merger in which domestic corporations went out of existence with the permission of the state. See, in this connection, Coal & Ice Co. v. Railroad Co., 144 N.C. 732, 57 S.E. 444. The decision of the present case, however, does not turn on this narrow point, for the Atlantic Coast Line Railroad Company of Virginia, the immediate predecessor of the plaintiff below, was already a corporation of both states when the consolidation of 1900 took place and the enabling acts of 1899 expressly provided that it should continue to be a domestic corporation after the railroad properties should have been united.

Our attention is also directed to the decision of Judge Pritchard formerly of this court in Lee v. Atlantic Coast Line Railroad Company, 150 F. 775, affirmed by this court in Atlantic Coast Line Railroad Company v. Dunning, 166 F. 850, wherein it was held that the transaction there considered was a merger rather than a consolidation, and did not affect the citizenship of the corporation. But that case related to an agreement of consolidation and merger of 1902 between the Atlantic Coast Line Railroad Company and the Savannah, Florida & Western Railroad Company (150 F. 786), and the enactments under consideration were those of South Carolina. It was held that the Constitution and laws of South Carolina (150 F. 793) contemplated that domestic and foreign railroad corporations might be united either through a merger or a consolidation, and that if a merger of a South Carolina with a foreign corporation took place, the foreign corporation did not become a domestic corporation for the pur-

Ct. 713, 47 L.Ed. 1078, but not in the latest cases, that the presumption of indisputable citizenship attributed to a corporation organized under the laws of one state will not be extended when it is later incorporated in another state.

pose of diverse citizenship, merely because, as required by the statute, it filed a copy of the agreement of merger with the Secretary of State and a certificate or charter of consolidation was issued to it by that official. The court relied upon the decisions of the Supreme Court with reference to similar state statutes in St. Louis & San F. Ry. Co. v. James, 161 U.S. 545, 16 S.Ct. 621, 40 L. Ed. 802, and Southern Railway Co. v. Allison, 190 U.S. 326, 23 S.Ct. 713, 47 L.Ed. 1078.

We think that the facts in the pending case pertinent to the corporate history of the Coast Line resemble those considered by the Supreme Court in Patch v. Wabash Railroad Co., 207 U.S. 277, 28 S.Ct. 80, 82, 52 L.Ed. 204, 12 Ann.Cas. 518, rather than those in the cases last cited. In Patch v. Wabash Railroad Company, an action was brought by the administrator of a deceased person against the Railroad Company in the state court of Illinois. The Railroad Company petitioned for removal to the federal court on the ground that it was a corporation organized under the law of Ohio and that the plaintiff was a citizen and resident of Illinois. When the case reached the federal court, the plaintiff resisted the removal by a plea in which he alleged that he was a citizen of Ohio and that the Railroad Company was a corporation organized and existing under and by virtue of the laws of Illinois, Ohio, and three other states by the consolidation of five corporations severally created therein, and hence that the defendant was a citizen of each of said states. The issue was determined on the facts alleged. The Supreme Court held that if the Railroad Company was to be regarded as a citizen of Illinois, the right of removal did not exist. It said:

"Therefore the question is raised how a corporation or corporations thus organized shall be regarded for the purposes of a suit like this. No nice speculation as to whether the corporation is one or many, and no details as to the particulars of the consolidation, are needed for an answer. The defendant exists in Illinois by virtue of the laws of Illinois. It is alleged to have incurred a liability under the laws of the same state, and is sued in that state. It cannot escape the jurisdiction by the fact that it is incorporated elsewhere. The assent of the state to such incorporation elsewhere, supposing it to have been given,— a matter upon which we express no opinion, —cannot be presumed to have intended or

to import such a change. This seems to be the opinion of the supreme court of Illinois, as it certainly has been shown to be that of this court. Chicago & Northwestern Ry. Co. v. Whitton, 13 Wall. 270, 20 L.Ed. 571; Muller v. Dows, 94 U.S. 444, 24 L.Ed. 207; Memphis & Charleston R. R. Co. v. Alabama, 107 U.S. 581, 2 S.Ct. 432, 27 L.Ed. 518; Quincy Railroad Bridge Co. v. County of Adams, 88 Ill. 615; Winn v. Wabash R. Co. [C.C.] 118 F. 55. What would be the law in case of a suit brought in Illinois upon a cause of action which arose in Ohio is a question that may be left on one side, as also may be the decisions in cases where a corporation originally created in one state afterwards becomes compulsorily a corporation of another state for some purposes in order to extend its powers. Southern Ry. Co. v. Allison, 190 U.S. 326, 23 S.Ct. 713, 47 L.Ed. 1078; St. Louis & San Francisco Ry. Co. v. James, 161 U.S. 545, 16 S.Ct. 621, 40 L.Ed. 802. In the case at bar the incorporations must be taken to have been substantially simultaneous and free. See Memphis & Charleston R. R. Co. v. Alabama, supra [107 U.S. 581, 2 S.Ct. 432, 27 L.Ed. 518]. If any distinction were to be made it hardly could be adverse to the jurisdiction of Illinois, in view of the requirements of its Constitution and statutes, that a majority of the directors should be residents of Illinois, and that the corporation should keep a general office in that state. We are of opinion that the defendant must be regarded in this suit as a citizen of Illinois, and therefore as having had no right to remove. It follows that the cause should be remanded to the state court."

It is certainly true that the acts of incorporation of North Carolina and Virginia, passed in connection with the mergers or consolidations described above, were substantially simultaneous in point of time and devoid of any element of compulsion. The case is therefore distinguishable from St. Louis & San F. Ry. Co. v. James and Southern Railway Co. v. Allison, supra. For other cases in which it was held that corporations were freely formed under special or general acts of the Legislatures of two or more states, so as to be regarded as citizens of each of them in determining questions of diversity of citizenship in the federal courts, see Memphis & C. R. Co. v. Alabama, 107 U.S. 581, 2 S.Ct. 432, 27 L.Ed. 518; Clark v. Barnard, 108 U.S. 436, 448–452, 2 S.Ct. 878, 27 L.Ed. 780; Graham v. Boston, Hartford & Erie R. Co., 118 U.S. 161, 6 S.Ct.

1009, 30 L.Ed. 196; Missouri Pac. Ry. Co. v. Mech (C.C.A.) 69 F. 753, 30 L.R.A. 250; Boston & Maine R. R. v. Hurd (C.C.A.) 108 F. 116, 56 L.R.A. 193; Winn v. Wabash R. Co. (C.C.) 118 F. 55; Williamson v. Krohn (C.C.A.) 66 F. 655; Lake Shore & M. S. Ry. Co. v. Eder (C.C.A.) 174 F. 944.

■ We reach the conclusion that in cases in the federal courts of North Carolina depending upon diverse citizenship for jurisdiction under section 24 (1) of the Judicial Code, 28 U.S.C.A. § 41 (1), the Coast Line must be regarded as a domestic corporation. The question of jurisdiction may of course arise in suits either by or against the corporation. Considering first suits against the corporation, we find many cases in which similar questions in regard to a corporation organized under the laws of two or more states were considered. For our present purposes these cases may be divided into two classes comprehending (1) suits brought by a citizen of one of the states of the incorporation in (a) the federal courts or (b) the state court of another of the states of incorporation; and (2) suits brought by a citizen of one of these states in (a) the federal court or (b) the state court of his own state. In suits of the first class it is uniformly held that the federal courts have original jurisdiction, or that the right of removal of the state to the federal court exists; and in suits of the second class, opposite conclusions are reached.

The point has been made in suits of the first class that federal jurisdiction should not be recognized, because the corporation, although organized under the laws of the state in which the suit is brought, is also domesticated in the same state as the plaintiff and hence, in this aspect, is of the same citizenship with him. The conclusion, however, has been reached that in each state of incorporation, the corporation is regarded as domestic so far as the jurisdiction of the federal courts and the right of removal are concerned. In Lake Shore & M. S. Ry. Co. v. Eder, 174 F. 944, 945, 946 (C.C.A. 6) it was said:

"Although for some purposes a body incorporated in several states may be regarded as an entity, it is not so for all. It is likely to have different attributes in each state arising from different laws which affect it. It might acquire franchises in one state which it does not possess in others. An incorporation by one state of the same individuals is not the adoption of the corpora-

tion of another state. These considerations furnish a reason why it is that, where a corporation of a state is sued in its own courts, regard is had to it only as a creation of that state for all purposes of jurisdiction. Business enterprises in which a combination of such corporations may engage, create common rights, and entail joint liabilities. These, however, concern the activities of the corporations, and not their essential character. When the idea is grasped that whenever a corporation is sued in a state by whose laws it has been created and the question of its citizenship is involved, the court will regard the corporation intended as defendant as the one created and existing by the laws of that state, we have the key to the solution of the inquiry. The laws of the state are the mould in which the corporation is cast and continues to exist. It derives its faculties from those laws; and the fact that it may be allowed to exercise those faculties in another state, however freely or with whatever limitations, does not alter its essential character in the state of its creation. It is a citizen of that state and of no other, whatever privileges it may there be permitted to enjoy, even though they be identical with those it enjoys at its home."

In Muller v. Dows, 94 U.S. 444, 447, 24 L.Ed. 207, in which suit was brought by citizens of Missouri and New York in the federal court of Iowa against a consolidation formed by the merger of a corporation of Mississippi and a corporation of Iowa under the laws of these states, it was held that the two companies had become one and "in the State of Iowa that one was an Iowa corporation, existing under the laws of that State alone."

See, also, Smith v. New York, N. H. & H. R. Co. (C.C.) 96 F. 504; Boston & Maine R. R. v. Hurd (C.C.A.) 108 F. 116, 56 L.R.A. 193; Williamson v. Krohn (C.C.A.) 66 F. 655; Muller v. Boston & Maine R. R. (D.C.) 9 F.Supp. 802.

Cases in class (1) brought in the state court have been held removable to the federal court for like reasons. Thus in Chicago & N. W. Railroad Co. v. Whitton, 13 Wall. 270, page 283, 20 L.Ed. 571, where suit was brought by a citizen of Illinois in the state court of Wisconsin against a corporation incorporated in Illinois, Wisconsin, and Michigan, removal was sought under a statute permitting such action in the presence of local prejudice, and it was said:

"The objection to the jurisdiction arises, that the defendant is also a corporation under the laws of Illinois, and, therefore, is also a citizen of the same State with the plaintiff. The answer to this position is obvious. In Wisconsin the laws of Illinois have no operation. The defendant is a corporation, and as such a citizen of Wisconsin by the laws of that State. It is not there a corporation or a citizen of any other State. Being there sued it can only be brought into court as a citizen of that State, whatever its status or citizenship may be elsewhere."

See, also, Baltimore & O. Railroad Co. v. Harris, 12 Wall. 65, 20 L.Ed. 354.

Similarly, a suit in class (2) instituted in the federal court must fail for lack of jurisdiction, the plaintiff and defendant being of the same citizenship. In some instances, the plaintiff has attempted to establish diverse citizenship by asserting that he is a citizen of the state in which the suit is brought and that the defendant is sued in its capacity as a citizen of another one of the states of incorporation; but this device failed, since it was held that the corporation must be considered as a corporation of the state in which the suit is brought. See the interesting opinion of Judge Lowell in Goodwin v. New York, N. H. & H. R. Co. (C.C.) 124 F. 358. See, also, Missouri Pacific Ry. Co. v. Meeh (C.C.A. 8) 69 F. 753, 30 L.R.A. 250; Goodwin v. Boston & Maine R. R. (C.C.) 127 F. 986; Peterborough Railroad v. Boston & Maine R. R. (C.C.A.) 239 F. 97; Goeffroy v. New York, N. H. & H. R. Co. (D.C.) 13 F.(2d) 947.

In harmony with these decisions, it has been held that when a suit in class (2) is brought in the state court, the defendant corporation has no right of removal to the federal court. This aspect of the question was carefully considered by three judges in Winn v. Wabash R. Co. (C.C.) 118 F. 55, a suit by citizens of Missouri in the state court of Missouri, against a consolidated corporation organized under the laws of Missouri, Ohio, Illinois, and Indiana. The defendant, alleging that it was a citizen of Ohio, removed the case to the federal court from which it was remanded to the state court for lack of jurisdiction. Speaking of the consolidated corporations organized as the Wabash Railroad, the court said (118 F. 55, page 58):

"It must, we think, logically follow that this new consolidated company has a legal existence in each of the states in which the constituent companies previously existed. At the time of the execution of the articles of consolidation the Wabash Western Railway Company was a Missouri corporation, chartered under and existing by virtue of the laws of the state. As such it was subject to the laws and regulations of the state which created it. It possessed such powers and rights only as were granted to it, and was subject to such limitations and restrictions as the constitution and statute laws imposed upon it. Without an enabling act of the state it had no power, authority, or right to enter into an agreement of consolidation with a foreign corporation, and thereby transfer to and vest in the new company its franchises and property."

See, also, Memphis & C. R. Co. v. Alabama, 107 U.S. 581, 2 S.Ct. 432, 27 L.Ed. 518; Patch v. Wabash R. Co., 207 U.S. 277, 28 S.Ct. 80, 52 L.Ed. 204, 12 Ann.Cas. 518; Case v. Atlanta & C. A. L. R. Co. (D.C.) 225 F. 862; Wasley v. Chicago, R. I. & P. R. Co. (C.C.) 147 F. 608.

Thus it is firmly established that when a corporation organized under the laws of two or more states is sued in one of these states, either in the state or federal court, and a question of diverse citizenship arises, it must be regarded as a citizen of that state; and we are of opinion that in a case of the kind before the court the same course should be followed when such a corporation is plaintiff in a suit in one of the states of incorporation. In different circumstances the opposite was held in Nashua & Lowell Railroad Corp. v. Boston & Lowell Railroad Corp., 136 U.S. 356, 10 S.Ct. 1004, 34 L. Ed. 363, three justices dissenting. The Nashua & Lowell Railroad Company had been incorporated both in New Hampshire and in Massachusetts. It brought suit as a corporation of New Hampshire in the federal court of Massachusetts against a corporation of Massachusetts for an accounting. The defendant pleaded to the jurisdiction of the court on the ground that the plaintiff was also a Massachusetts corporation but the plea was overruled. The court referred to many decisions which hold that when two corporations in different states are consolidated, the separate identity of each as a corporation and citizen of the state of its creation is not lost, even though they have the same stockholders and directors; and it was held that the plaintiff corporation must be considered in the case then pending in its character as a corporation of New Hampshire. It was pointed out (136 U.S. 356, page 382, 10 S.Ct. 1004, 1010, 34 L.Ed.

363) that otherwise the defendant Massachusetts corporation could sue the plaintiff as a New Hampshire corporation in the federal court of New Hampshire, whilst the latter could not enforce its claims against the former in the federal court of Massachusetts. This case has not always been understood (see the discussion in Goodwin v. New York, N. H. & H. Railroad Co. [C. C.] 124 F. 358, 365), and it has not influenced the definite course which the courts have followed in considering suits against a corporation of two or more states. Had the logical consequence of the ruling been observed, the federal courts would have retained jurisdiction of suits against a corporation in one of the states of incorporation, when the complaint showed that it was sued in its character as a corporation of another state. If such a corporation as plaintiff may assume at will the citizenship of either state, it should also be suable in either capacity at the will of a plaintiff. But, as we have seen, suits against such a corporation in any state of incorporation must be brought against it in its character as a citizen of that state. It should also be noted that a restriction of the corporation in a suit by it to citizenship of the state in which the suit is brought, referred to in Nashua & Lowell R. Corp. v. Boston & Lowell R. Corp., supra, is not illogical or unjust because it has become a citizen of the state voluntarily for its own purposes, and therefore has no occasion to appeal to the federal courts for the protection of its interests. The same thing may not be said of a citizen of an incorporating state who goes out of his own state to bring suit against the corporation in another incorporating state, and therefore he may sue it in that jurisdiction in its domestic character.

It has been suggested that in strictness the acts done in any of the incorporating states are the acts of the local corporation only, and the body incorporated in the foreign jurisdiction is not present, and hence it cannot be sued there since service on an agent will generally not give jurisdiction over the principal; but that this reasoning does not apply to suits by the consolidated corporation, for a foreign corporation, although not present, may bring suit as such in another state. Beale on Conflict of Laws, 920, 926. We think, however, that the procedural difficulties of getting service are not an adequate basis for a distinction between suits by and suits against a consolidated corporation. It may well be considered that the foreign corporation is doing business in the fullest sense in the domestic state through the agency of the body there incorporated, service on which, under state statutes generally prevailing, would be sufficient to bring the foreign corporation into court. Moreover, the courts should be slow, in dealing with a subject matter and a legal person, in regard to which their pronouncements have been so uncertain, to disregard the fact that in practice a corporation of two or more states usually conducts a single business under the management of a single group of stockholders and directors. It was in order to satisfy the actual requirements of the corporate person that a liberal interpretation was given to the grant of judicial power over controversies between citizens of different states under article 3, § 2, of the Federal Constitution, whereby corporations were given access like human beings to the federal courts. Having begun on this realistic basis, it is not reasonable or wise to disregard actuality and pursue legal theory to an inequitable conclusion.

If a more definite legal formula is needed to justify the conclusion that the citizenship of a corporation of two or more states shall be the same in suits by as in suits against it, it may be found in the undoubted power of the states to authorize the creation and dissolution of corporations that occur in corporate consolidations and mergers; and when no element of compulsion or impeachment of the federal power is involved, the condition of domesticity in each of the states, imposed by the permissive statutes, must be observed. A legal entity which has sought and obtained a plurality of charters, may not assume either citizenship at will in violation of the condition of the grants.

The decree of the District Court must be reversed and the case remanded, with directions to dismiss the bill of complaint for lack of jurisdiction.

Reversed and remanded.