# Richmond

WINCHESTER AND WESTERN
RAILROAD COMPANY

V.

COMMONWEALTH OF VIRGINIA, ET AL.

December 2, 1983.

Record No. 830492.

Present: All the Justices.

*Flournoy L. Largent, Jr. (John F. Anderson; Largent, Anderson & Largent,* on brief), for appellant.
*Lewis S. Minter (Edward C. Tosh,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

Pursuant to Code § 58-672, Winchester and Western Railroad Company (the Railway) filed its application with the State Corporation Commission for review and correction of an assessment for taxation of rolling stock as of December 31, 1980. After the Commission denied the application except for a minor adjustment in the assessment, the Railway filed its petition for appeal against the Commonwealth and the Commission.

Findings of fact, made by the Hearing Examiner and approved by the Commission, are not in dispute. The Railway, a Virginia corporation, operates a railroad located entirely within the boundaries of the Commonwealth; its track extends a distance of 18 miles from Gore to Winchester. The Railway is a wholly-owned subsidiary of Unimin Corporation, which ships sand from its Virginia plant at Gore and from its plants in other states. Prior to 1980, the Railway acquired by long-term lease its entire fleet of 325 freight cars, all of which bore the Railway's markings during 1980. Of the 325 cars, 209 were never used in Virginia in 1980, 42 were used for not more than two months, 14 for two to six months, and 60 for more than six months. Two of the cars used in Virginia for less than six months were destroyed before December 31, 1980. None of the 325 cars was subject to taxation for 1980 in any state other than Virginia; the Commission assessed all the cars for taxation in Virginia for that year. The Commission did not assess other cars the Railway used in Virginia which did not bear the Railway's markings.

The Hearing Examiner concluded that assessment of 323 cars owned or operated by the Railway on December 31, 1980, was proper. After hearing argument on the Railway's exceptions to the Hearing Examiner's report, the Commission, by opinion and order entered January 21, 1983, one member dissenting, approved the assessment of 323 cars. The Commission reduced the total assessment, however, from $9,876,122 to $9,818,128, by deleting the assessed value of the two destroyed cars.

The assessment of rolling stock, mandated by Code § 58-529 (Repl. Vol. 1974), is based upon the annual report required

by Code § 58-524 (Repl. Vol. 1974), which provides in pertinent part as follows:

> Every railway company doing business in this State shall report on or before the fifteenth day of April, to the State Corporation Commission, its real and tangible personal property of every description as of the thirty-first day of December preceding, the fair cash value thereof, and the county, city, town or magisterial district in which it is located. . . .
> The report shall classify such property under the following heads:
>
> \*   \*   \*
>
> (5) Rolling stock, which shall include all locomotives, of whatever motive power, autocars, cars of every kind and description, and all other equipment which it is reasonably proper to class as rolling stock; provided, that they shall report and be assessed on the average amount of rolling stock habitually used by them in this State;
>
> \*   \*   \*

The Railway argues, as it did before the Commission, that this statutory language is clear and controlling and that it limits the assessment of rolling stock to the 60 cars used for six months or more in Virginia in 1980. These were the only cars, the Railway says, that were "habitually used" in Virginia within the meaning of the statute.

The Commission relies upon its long-standing methodology for determining the rolling stock assessable for taxation in Virginia. By Administrative Order entered May 25, 1928, the Commission established the method for determining such assessable rolling stock. As to freight cars, the order provided in pertinent part as follows:

> (a) All freight train cars (except caboose cars) shall be apportioned, apportioning to the State of Virginia that proportion which the car miles made by such equipment in Virginia is of the car miles made by such equipment on the entire system.

Using that methodology, the Commission's opinion stated that the Railway, operating only in Virginia, could only report intrastate car miles; therefore, the percentage to be applied to the rolling stock was 100%.

The Railway contends that the 1972 amendment to Code § 58-524 (Acts 1972, c. 813) changed the applicable law; for the first time, the law put intrastate railroads on the same basis as interstate railroads, which could be taxed only on rolling stock "habitually used" in Virginia. The Commission concedes that the amendment requires that the "habitually used" provision be applied to all railroads subject to the tax, but it asserts that the amendment was not intended to change the law pertaining to taxation of rolling stock. Since the 1972 amendment became effective, the Commission says, the same methodology used since 1928 has been followed consistently without interruption and without objection by any railroad until the Railway initiated this proceeding. The Commission argues that it has properly determined the Railway's rolling stock "habitually used" in Virginia by using the apportionment formula based on car miles.

The Commission frames the first question on appeal to be whether Virginia can tax all the rolling stock of a railroad which is domiciled and operated solely in Virginia even though some of the railroad's rolling stock never enters the State, or does so only sporadically. This question must be answered in the affirmative, the Commission says, except for rolling stock for which the railroad has established another tax situs. The Railway, while conceding that Virginia properly imposed such a tax for many years, views the crucial issue to be whether Code § 58-524, as amended in 1972, authorizes Virginia to tax all the Railway's rolling stock, wherever used. We agree that resolution of this appeal turns not upon what Virginia has the right to tax but upon what it has elected to tax under the statute. To determine the legislative intent we will review briefly the history of the taxation of rolling stock in Virginia.

An early statute required every "railroad and canal company not exempted from taxation by virtue of its charter" to report annually its real and personal property, including rolling stock. Acts 1881-82, c. 119. In *Marye* v. *Baltimore and Ohio Railway*, 127 U.S. 117 (1888), the United State Supreme Court reviewed this statute. The Baltimore and Ohio Railway (B. & O.) was incorporated in Maryland; under its charter its rolling stock was exempt

from taxation. The B. & O. had no track in Virginia, but it connected with certain railroads incorporated in Virginia and operated these roads under leases or contracts, using its own rolling stock for the purpose. No rolling stock was permanently set apart for use on these lines. Virginia assessed a tax on the rolling stock of the B. & O. used on these Virginia railroads and attempted to collect by distraint. A Federal court in Virginia enjoined the collection, and an appeal to the Supreme Court followed. Virginia argued that the tax was assessed only on rolling stock in "constant use" in Virginia. The B. & O. argued that without legislation to the contrary, the tax situs of its personal property was in Maryland, the B. & O.'s place of domicile.

In upholding the injunction, the Supreme Court ruled that the statute applied only to domestic corporations in Virginia. In dicta, however, the Court's opinion stated that if Virginia permitted the B. & O. to bring rolling stock into Virginia "habitually to use" it therein, Virginia could by statute tax such rolling stock even if the individual items were constantly changing. In such cases, the opinion volunteered, "the tax might be fixed by an appraisement and valuation of the average amount of the property thus habitually used . . . ." *Id.* at 123-24.

It appears this suggestion prompted the General Assembly to enact a statute requiring "[e]very railroad and canal company of this state not exempted from taxation by virtue of its charter" and every such company incorporated under the laws of another State and doing business in Virginia to report and pay taxes on its real and personal property. Acts 1891-92, c. 254, p. 429. Included under paragraph "Fourth" to be reported was rolling stock, "provided, that the rolling stock of foreign corporations doing business in this state shall be assessed on the average amount of such property habitually used in this state." *Id.*

Until 1972, this proviso, without substantial change in language, remained in the statute providing for assessment of rolling stock. *See* Acts 1906, c. 300; Acts 1910, c. 281; Acts 1912, c. 214; Acts 1915, c. 141; Code of 1919 Tax Bill § 27; Acts 1926, c. 358; Acts 1927, c. 111; Acts 1928, c. 45, p. 142; Tax Code § 215 (1936); and Code of 1950 § 58-524(5).

From 1915 to 1936, another statute required the Commission to assess annually the rolling stock of all corporations operating railroads and doing business in Virginia, "so far as the same is taxable in this State." Acts 1915, c. 80, p. 112; Code of 1919 § 2207;

Acts 1926, c. 576, pp. 956-57. The statute was repealed by Tax Code § 436 (1936); subsequently, the Commission's duties in the assessment of rolling stock were included in § 215 of the 1936 Tax Code, then in §§ 58-524, *et seq.* of the 1950 Code. The language "so far as the same is taxable in this State" was eliminated.

The 1972 amendment to § 58-524 (Acts 1972, c. 813) requires "[e]very railway company doing business in this State" to report its real and tangible personal property. References to canal corporations, to corporations of Virginia not exempt from taxation by their charters, and to foreign corporations doing business in Virginia were deleted. The amendment to the proviso in § 58-524(5) applying to rolling stock deleted the words "foreign railway and canal corporations doing business in this State" and replaced them with the word "they," which apparently refers to every railway company doing business in Virginia. The proviso now reads "provided, that they shall report and be assessed on the average amount of rolling stock habitually used by them in this State."

It is clear, as the Commission concedes, that the amended proviso applies to railroads operating exclusively within Virginia as well as to those operating both within and without the State. Thus, all railroads operating in whole or in part in Virginia are assessable for taxation on rolling stock "habitually used" in Virginia.

The Commission says that there has been no change in its methodology for assessing rolling stock since 1928 and that the 1972 amendment did not make any substantive change in the law. Under § 163 of the 1902 Constitution, the Commission notes, foreign corporations were prohibited from performing public service business in Virginia except for those foreign corporations engaged in such business on the effective date of the Constitution. Under Article IX, § 5 of the 1971 Constitution, the prohibition was restated without a "grandfather" exception. Therefore, the Commission says, deletion by the 1972 amendment to Code § 58-524(5) of the references to foreign corporations doing railroad or canal business in Virginia merely eliminated obsolete surplusage because there were at that time no such corporations.

Before the 1972 amendment, Code § 58-524.and predecessor statutes provided for taxation of all the rolling stock of Virginia railroads, while providing for taxation of only the rolling stock "habitually used" in Virginia by foreign railroad companies. There was no express statutory authority, therefore, to assess only

the rolling stock "habitually used" in Virginia by Virginia railroad companies engaged in multistate operations. Nevertheless, as the Commission says, there have always been constitutional restrictions on the taxation of multistate operations. The 1928 administrative order recognized these limitations by providing an apportionment process for determining the Virginia assessment of rolling stock of all railroad companies, domestic as well as foreign, which operate both in Virginia and elsewhere. Whether necessary or not, since 1928 the Commission has also used the same methodology for determining the assessment of the rolling stock of intrastate railroads. Thus, since 1928 the Commission has been assessing all railroad rolling stock "habitually used" in Virginia as determined by the percentage of car miles (or in certain instances track miles) in Virginia to total car miles throughout the railroad's system. In the present case, this results in assessment of all the Railway's rolling stock.

■ Tax statutes are to be construed strictly against the taxing authority. *Com. Nat. Resources* v. *Commonwealth*, 219 Va. 529, 537, 248 S.E.2d 791, 796 (1978). The construction of a tax statute by the taxing authority, however, is entitled to great weight. *Webster* v. *Department of Taxation*, 219 Va. 81, 84-85, 245 S.E.2d 252, 255 (1978). This is especially true where, as in the present case, there has been widespread acquiescence in the construction.

■ There is a basic presumption, the Commission argues, that an intrastate railroad has only enough cars to render its public service in Virginia and that it is habitually using all its own cars for that purpose. We agree that this is a reasonable presumption. We also agree that the Commission may reasonably presume that to the extent an intrastate railroad does not use its own cars in Virginia, it uses cars of other railroads which are in effect substitutes for its own. These presumptions, however, are rebuttable. Perhaps, as the Commission maintains, there was no legislative intent to change the substantive law by the 1972 amendment to the statute. Nevertheless, in its present form, the statute, regardless of intent, unequivocally mandates assessment on the average amount of rolling stock habitually used in Virginia, and the statute is controlling. However reasonable may be the Commission's presumptions, they may be rebutted when the assessment is challenged.

■ As the Commission concedes, an intrastate railroad may rebut the presumption that all its cars are habitually used in Virginia by showing that some have established a tax base elsewhere. This rebuttal evidence is not available in the present case because none of the Railway's cars is subject to taxation outside Virginia. We conclude that an intrastate railroad may also rebut the presumption by showing that the average amount of rolling stock habitually used by it in Virginia, including cars of other railroads, is less than the total amount of its rolling stock.

■ We reject the Railway's contention that only its rolling stock used in Virginia for at least six months during the tax year was "habitually used" within the meaning of the statute. The word "habitually" has been defined as "customarily." Black's Law Dictionary, 640 (rev. 5th ed. 1979). Freight cars might be customarily used in Virginia for only a brief period of time within the tax year, far less than six or even two months. The Commission is uniquely qualified to make this determination in evaluating the relevant evidence.

■ We hold that the Railway may rebut the presumption that all its rolling stock is habitually used in Virginia by showing that the average amount habitually used, including cars of other railroads, is less than the 323 cars comprising its entire fleet. Upon such a showing, the Railway may be assessed only on the lesser amount.

We will reverse the order of the Commission and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*